Judge Owsley
delivered the Opinión of the Court.
In an action of debt, brought by Knight against the heirs of Abraham Applegate, deceased, there was rendered by the circuit court of Mason., a judgment, “ that Knight recover against James T. Applegate and Judith Applegate, heirs of Abraham Applegate, deceased, the suns of one hundred dollars, the debt in the specialty filed, with -interest thereon, at the rate of six per centum per annum, from the 16th day of March, 1820, until [said, together with his damages aforesaid, in manner and *336 form by the jury aforesaid in their verdict assessed, and also bis cost by him about his suit in this behalf expended, tó be levied of the estate which descended to the said Judith Applegate and James T. Applegate., heirs of Abraham Applegate deceased, and the said James and Judith Applegate in mercy, &c.”
Credit on the judgment.
jOxecution of Ji.fa. omitting tlie credit.
Sheriff’s t'e-turn executed on a tract of land, &c.
Venditioni exponas,sale on credit, and sheriff’s ret am.
“But this judgment is to have credit for forty-two dollars and twenty-five cents, paid the 19th of December, 1819, per endorsement on said specialty.”
The damages alluded to in the judgment, are one cent, which was assessed by the jury empanneled for that purpose.
Subsequent to this judgment, there issued from the clerk’s office of the Mason court, an execution against the estate Which descended from Abraham Applegate to James T. Applegate and Judith Applegate, his heirs, commanding the sheriff of Mason county, to cause to be made, the sum of one hundred dollars, with interest thereon, at the rate of six per centum per annum, from the 16th of March, 1820, until paid, and one cent damages, which the execution suggests, Woodson Knight recovered in the Mason circuit court against them, for debt, interest and damages," also, ten dollars and sixty-nine cents, which to the said Knight was adjudged by the said court, for his cost, &c. But neither in the face of the execution nor by endorsement thereon, is any notice taken of the forty-two dollars and twenty-five cents, which is directed by the judgmentto be credited.
This execution was returned by the Sheriff, executed on a tract of land containing sixty-seven acres two roods and twenty poles, being the balance of the land after deducting the Widow’s dower, of which Abraham Applegate died seized, and not sold for want of time.
After this, there issued from the clerk’s office of the same court, a venditioni exponas, cbmrnanding the sheriff to expose to sale, the land winch had been seized by him under the execution, to which reference has been already made, &c. and the sheriff made return thereon, that<6 by virtue of this writ *337 Isold the: within mentioned land, on the 23d of March, <822, to Vincent Applegate, who being the highest bidder, became the purchaser, at the price of five hundred and forty-one dollars, of which sum, one hundred and twenty-nine dollars eighty-one and one fourth cents, is applied to this execution* it being the full amount due thereon — See sale bond returned herewith.”
Notice of motion.
Objection to notice waved,
Trial & judgment of the circuit court, quashing the execution Si. salo. Credit on a judgment, entered a( its foot, forms a part of the judgment, & ought to be noticed by the clerk, in. the execn tion — ■
But-
The sale bond which was executed by Vincent Applegate, recites the proceedings of the sheriff, and accords in amount with the sheriff’s return.
Subsequent to this, the heirs of Abraham Apple-gate notified Woodson Knight, the plaintiff in the execution, that on a named day, lie would move the circuit court of Mason, to quash the execution and the sale bond, which the sheriff had taken from Vincent Applegate.
When the motion came on to be heard, Vincent Applegate appeared in court, waived the necessity of notice, and consented to a trial of the motion, as though he had been regularly served with notice.
The trial of the motion accordingly proceeds, and the court rendered judgment quashing the execution and sale bond. Exceptions were taken to the opinion of the court, and the evidence produced on the trial, made part of the record. '
It cannot be doubted, but that the execution under which the land was seized by the sheriff, did not strictly pursue the judgment which was recovered by Woodson Knight, against the heirs of Abraham Applegate. In commanding the sheriff, of the estate of the decedent Applegate, to his heirs descended, to make the plaintiff Knight’s demand, there is a perfect conformity between the execution and judgment, but in the amount which, by the execution, the sheriff was directed to make, there is an essential departure from the judgment. The departure consists in the execution omitting to notice the forty-two dollars and twenty-five cents, wdiich in the judgment, was directed to form a credit to the one hundred dollars in a previous part of-the judgment, adjudged against the heirs of Applegate. The directions in relation to that credit, form a componant part of the judgment of the court, and *338 mast be understood to have the effect of diminishing the judgment -from what it would be, otherwise considered, a sum equal to the amount of the credit, and of course, in strict propriety, should have been noticed by the clerk in issuing the execution.
Omission of a credit entered at the foot of a judgment in issuing an execution, is no ■ground for ■quashing it.
if the clerk omit to notice inthet/i. fa. the credit for about half the judgment entered at its foot, and the sheriff raise the entire sum by a sale of land,the title of the land will not pass.
But in the opinion of the court, the failure of the clerk to notice that credit, is not that sort of irregularity for which the execution should be quashed. It was clearly nothing more than a clerical misprison, and upon vveil settled principles, might he corrected by an amendment of the execution. It would be otherwise, if the departure from the judgment was calculated to render it uncertain whether or not the execution issued upon that judgment, but it is impossible for the most superficial observer, to compare the execution with the judgment, and hesitate for a, moment to pronounce the former to have issued upon the latter.
It was therefore, erroneous to quash the execu - tion.
But -it does not thence follow that the sale bond 'should 'be sustained. To uphold a sale of land, made under execution by an officer, it is not enough that the execution purports upon its face to be regular, and appears to have emanated from competent authority; there must also be a judgment to which the sale money is to be applied. The reason is obvious. Lands are made subject to sale under writs of fieri facias by statufary enactment, and as it is only in satisfaction of judgments, that the statute has authorized the.sale, there must of course be a judgment, to which the proceeds of the sale may be applied, to make the sale a valid one. It would therefore, judging from the facts proved on the trial of the motion, seem to follow that the sale bond cannot be sustained. For the land appears to have been sold, and the bond taken for a sum equal to that mentioned in the execution which issued in favor of Knight, against the estate of Applegate, and as the judgment in favor of Knight, is in fact for less than the execution, there is no judgment to which the excess contained in the exeexecution, and included in the bond, can be applied.
If, however, in such case, the sale was made by other judgments and executions also, & the proceeds of the land were covered by them after deducting the credit, the sale is valid.
One sale may be made of land, to satisfy several exucutisns.
To sustain a sale bf land under several executions, judgments to cover the amount of thft sales, must he produced.
Rui there appears from the record, to have been at the time the land was sold, in the hands of the sheriff, several other executions against the estate of Applegate, under all of which, together with that in favor of Knight, the sheriff appears to have acted in making the sale, and on the trial of the motion in the court below, an attempt was made to sustain thb bond, by drawing in aid of the sale of the land, those other executions.
The amount for which the land sold, fell greatly below the aggregate amount of the several executions held by the sheriff, and although, in consequence of the judgment in favor of Knight being for less than the execution which issued in his favor, the sheriff may not have derived under that judgment and execution; competent authority to sell for the entire amount of the execution, it was contended, that under the other executions, in conjunction with that of Knight, a sufficient authority was conferred upon the sheriff to make the sale, the proceeds thereof, being insufficient to pay the amount of the executions, after deducting the excess contained in Knight’s execution.
This argument is certainly entitled to great weight, and would be conclusive in support of the sheriff’s authority, if there had- been introduced in evidence, judgments to uphold those other executions.
It would not be so, were it incompetent for the sheriff to act under all of the executions at the same time; but as they were all against the estate of the same persons, no solid reason is perceived, why the sheriff should not, at the same time, sell the-estate to satisfy the whole. It is believed to have been the general practice for sheriffs to do so, ever since lands were suhjected to sale under executions, and the quiet and repose of estates held under such sales, requires that the practice should not be disturbed.
But there is contained in the record, no judgment upon which either of those other executions issued, so that were the proper parties before the court on the trial of the motion, we should be constrained to decide against the validity of the sale, and of course, quash the bond.
Where the ^TV'jikb’1'1 virtue of mver.vl exenqe‘.??L,\,!¡h<;,.<5e" his motion to qiiash, must moke all interested parties.
.Mandats.
Bibb for plaintiff; Depew, for defendants.
We think, however, that the proper parlies were not before the court. The plaintiffs in those other executions, should, we apprehend, have had notice the motion. The sale being made to satisfy their executions, as well as that of Knight, if in aprons proceeds of the sale, the sheriff has taken a bond to Knight for too much, it is a prejudice to them, and they should have an opportunity being beard, in any contest involving that matter.
The judgment of the court quashing the bond, as well as that quashing the execution, must, therefore, be reversed with cost, the cause remanded to the court below, and in consequence of the lack of proper parties, the motion dismissed with cost.